Christopher Drew McIllwain v. State















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-047-CR

     CHRISTOPHER DREW McILLWAIN,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 366th District Court
Collin County, Texas
Trial Court # 366-80127-96
                                                                                                                

O P I N I O N
                                                                                                                

      This is an appeal by Appellant McIllwain from his conviction for aggravated sexual assault
on a child younger than 14 years of age (enhanced by two prior felony convictions) for which he
was sentenced to 50 years in the Texas Department of Criminal Justice-Institutional Division.
      Appellant was convicted by a jury for aggravated sexual assault on his stepdaughter, age 11. 
The victim D.D. was visiting with her grandmother in San Antonio in June 1995, when she made
"outcry" that her stepfather had sex with her in their home in Plano. The grandmother contacted
the Child Advocacy Center which investigated. Dr. Murnard examined D.D. and testified that
D.D.'s vagina had been penetrated on more than one occasion. Appellant left Texas for Tennessee
when he learned of the accusation. He was arrested, brought back to Texas, indicted for
aggravated sexual assault, pled "not guilty," and was found guilty by a jury. He elected to have
the judge assess punishment, and was sentenced by the judge to 50 years in prison.
      Appellant appeals on three points of error.
      Point 1: "The State failed to prove by sufficient evidence, beyond a reasonable doubt, that
the appellant intentionally and knowingly caused the penetration of the vagina of a child."
      Specifically, Appellant contends the evidence is legally insufficient to prove that he penetrated
the vagina of the victim.
      The standard of review for challenges to the sufficiency of the evidence is whether, when
viewed in the light most favorable to the verdict, any rational trier of fact could find from the
evidence beyond a reasonable doubt, the essential elements of the crime. Jackson v. Virginia, 443
U.S. 307 (1979); Dunn v. State, 819 S.W.2d 510, 513 (Tex. Crim. App. 1991). The appellate
court will not disturb a factfinder's decision unless it is irrational or supported by only a "mere
modicum" of evidence. Marino v. State, 755 S.W.2d 866, 869 (Tex. Crim. App. 1988). 
Penetration within the meaning of Penal Code 22.02, occurs so long as contact with the female
sexual organ could reasonably be regarded by ordinary English speakers as more intrusive than
contact with outer vaginal lips. Karnes v. State, 873 S.W.2d 92, 96 (Tex. App.—Dallas 1994,
no pet.); Vernon v. State, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992). Penetration of the
vaginal canal is not required to prove penetration. Touching beneath the fold of the external
genitalia amounts to penetration within the meaning of the aggravated sexual assault statute. 
Vernon, 841 S.W.2d at 409.
      The victim testified that Appellant "the first time" tried to stick his private in her private. 
This became frequent, three to four times a week, and occurred in the apartment in Plano. She
testified Appellant would tell her to "take off her clothes"; that having sex was a "natural-born
behavior"; that her mom's hole was bigger than hers, but the more they had sex, the bigger hers
would become." This went on for three or four months. She would be rewarded with donuts,
reinstatement of privileges, and money. She further testified that Appellant put his finger into her
private part; and that she had not had sex with anyone except Appellant.
      Dr. Murnard testified she has a B.A. and M.A. in nursing, a Ph.D.; that she is a Certified
Pediatrics Nurse Practitioner; and is allowed to make diagnoses and treat children. She performed
a physical examination of the victim. She testified the victim had a gaping hymen; that her
examination conclusion of the victim was consistent with a history of vaginal penetration; and that
the penetration was most likely due to penile penetration.
      We think the jury could find beyond a reasonable doubt that Appellant had penetrated the
vagina of the victim.
      Point 1 is overruled.
      Point 2: "The evidence was insufficient to support Appellant's conviction for aggravated
sexual assault of a child based on the lack of credibility of the victim."
      Specifically, Appellant asserts that he presented several witnesses, including the victim's
mother, who testified that the victim's reputation for truthfulness was bad, and for which reason
the jury could not have found the essential elements of the offense beyond a reasonable doubt.
      The factfinder is the sole judge of the witnesses' credibility and the weight to be given their
testimony. Bonham v. State, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984). The factfinder may
reject all or part of any witness' testimony. Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim.
App. 1986).
      In this case the jury heard the victim testify, and heard Nurse Murnard testify. They also
heard the witnesses who testified that the victim's reputation for truthfulness was bad. Further,
the jury heard three rebuttal witnesses called by the State who testified as to the victim's mother's
truthfulness.
      The jury, as trier of facts, the credibility of the witnesses, and the weight to be given their
testimony, was free to accept or reject the testimony of any witness. Flanagan v. State, 675
S.W.2d 734 (Tex. Crim. App. 1982). Thus the jury was free to disbelieve Appellant's witnesses
and to believe the State's witnesses.
      Point 2 is overruled.
      Point 3: "The State failed to prove by a preponderance of the evidence that the offense
occurred in Collin County, Texas."
      The victim testified she lived in the Steeplechase Apartments in Plano; that the incidents
occurred in the apartment when her mother was working; that she attends Rasor Elementary
School in Plano; and that Plano is in Texas.
      Officer Wilson testified that he was a police officer of the City of Plano; witness Bachurn
testified that Rasor Elementary School is in Plano; that Plano is in Collin County, Texas; and that
she knew that the victim was living in Collin County at an apartment complex.
      The State did prove by a preponderance of the evidence that Plano was where the offense
occurred and that Plano was in Collin County, Texas.
      Point 3 is overruled. The judgment is affirmed.
 
                                                                               FRANK G. McDONALD
                                                                               Chief Justice (Retired)

Before Chief Justice Davis,
      Justice Cummings, and
      Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed November 26, 1997
Do not publish 



: 0.388889in">      Keller also testified that Richard believed that Debbie could take care of the children. She
stated that Richard was incarcerated for long periods of time and she had observed him to be
intoxicated during some of her visits. At the time of trial, Richard was incarcerated for two
misdemeanors, theft and possession of marijuana. His parole had been revoked and he was being
sent back to prison. 
      Debra Williams, a teacher at the Texas Mental Health and Mental Retardation Department
(“MHMR”), testified on behalf of Debbie. Williams taught Debbie parenting and money skills. 
She stated that Debbie had progressed in her parenting skills. According to Williams, Debbie was
currently under case management at MHMR and a provider would soon be coming into the home
once or twice a week to help her with household chores. Evonne Bailey, Richard’s sister, testified
that she could check on Debbie and the children and make sure that they were healthy and went
to their doctor appointments. She further testified that Debbie paid attention to the children. 
Richard testified that he did not knowingly leave the children in surroundings which endangered
their physical or emotional well-being. 
      Evidence that a parent has failed to seek appropriate medical treatment for a child will support
a finding that the parent has knowingly endangered the child’s physical and emotional well-being. 
See In re S.H.A., 728 S.W.2d 73, 87 (Tex. App.—Dallas 1987, writ ref’d n.r.e.). In S.H.A., as
in this case, numerous social service agencies were actually providing most of the care for the
children. DPRS presented evidence that Debbie failed to seek appropriate medical treatment for
the children because of her mental deficiency. Thus, the evidence supported a finding that she has
a mental deficiency which made her unable to care for her children. Richard left the children in
Debbie’s care and continued to believe that Debbie could provide adequate care for their children. 
Thus, the evidence supports a finding that he knowingly allowed the children to remain in
conditions and surroundings which endangered their emotional and physical well-being.
      Debbie argues that because the evidence shows that she is mentally deficient, she could not
have knowingly left her children in conditions or surroundings which endangered their emotional
or physical well-being. See Tex. Fam. Code Ann. § 161.001(1)(D) (Vernon Supp. 1998). 
Debbie’s parental rights can be terminated if the court finds that she is mentally deficient and
unable to care for her children under section 161.003 of the Family Code. See Spurlock v. Texas
Dep’t of Protective & Regulatory Servs., 904 S.W.2d 152, 155 (Tex. App.—Austin 1995, writ
denied); Tex. Fam. Code Ann. § 161.003 (Vernon 1996). A finding on any one ground of
termination and that termination is in the best interest of the child is sufficient to terminate parental
rights. See Edwards v. Texas Dep’t of Protective and Regulatory Servs., 946 S.W.2d 130, 135
(Tex. App.—El Paso 1997, no writ). Therefore, Debbie’s rights can be terminated on the sole
ground that she is unable to take care of her children because she is mentally deficient and a
further finding under section 161.001(1)(D) is not required. 
      For the reasons detailed above, we find probative evidence that Debbie has a mental
deficiency which renders her unable to take care of her children and Richard knowingly placed
or allowed their children to remain in conditions or surroundings which endangered their physical
and emotional well-being. See Southern, 774 S.W.2d at 640. After considering all of the
evidence, we find that the court reasonably found by clear and convincing evidence that Debbie
has a mental deficiency which renders her unable to take care of her children and Richard
knowingly placed or allowed their children to remain in conditions or surroundings which
endangered their physical and emotional well-being. See Spangler, slip op. at 5, 1998 WL 41642,
at 3*. 
       Thus, we conclude that the evidence is legally and factually sufficient to support the decree
of termination. We overrule the first and second issues presented and sustain the third issue. We
modify the judgment to reflect that the parent-child relationship is terminated between Walter Ray
Robbins and S.B. We affirm the judgment as modified.
 
                                                                               REX D. DAVIS 
                                                                               Chief Justice                                
Before Chief Justice Davis
       Justice Cummings and
       Justice Vance
Affirmed as modified
Opinion delivered and filed April 16, 1998
Do not publish